Good morning, your honors. Attorney Muldew for Mr. Keith Anderson. And my client has directed me to inform the court that he would like you to consider the issues he raised pro se and that he disavows any arguments I make. And I'm here at the appointment by the court. That said, this court directed the government to respond to whether Mr. Anderson waived the issue of a violation of the Costa Rican Treaty by charging him with money laundering when that those charges were not part of the decision on the issue. At least we think so. As the government notes in its brief, it's very difficult, almost extremely impossible to get documents through the embassy from the Costa Rican courts. Prior to filing my opening brief, I tried to get all the court documents. I was unsuccessful. I did get a copy of the renunciation of Mr. Anderson's Costa Rican citizenship, and I did get it translated, but I was unable to get any more beyond that. The government was successful in getting Judge Solano's decision on extradition, where she definitively said money laundering is not recognized in Costa Rica unless it's for drugs trafficking, money derived from drugs, and that the facts that the government presented did not allege that Mr. Anderson laundered money from drugs. Therefore, she decided that those charges, she would not allow extradition on note. They did on the tax charges. You know, I realize it's not in the record, but I'm curious, what steps did you take, actually, to obtain the ruling on extradition? Okay. I called the United States Embassy in Washington to get the phone number of the United States Embassy in Costa Rica. I was put on hold for a very, very long time. When someone finally came on the phone, she said that the person who could answer that wasn't there, that I should call back. And so I did. Several days later, then the person I got on the phone only spoke Spanish, and I couldn't understand what I was supposed to do. So you made several calls and never got a response. Is that your answer? I attempted to locate some Costa Rica lawyers that might be amenable to assisting me in going to a court. All right. Well, I have one other question. In your reply brief, you don't address any of the government's responses to the arguments in your opening brief. Does this mean that you've conceded these issues to the government, and now we lie solely on your specialty argument? No, Your Honor. It meant that I believe that the argument I made in my opening brief, my response, my reply brief, was focused solely on this new issue that came to light because the government now gave me Judge Solano's decision, which I — Do you ever think of calling the government when you were doing your brief to get a copy, see if they had a copy of Judge Solano's decision, of the extradition decision? Could you repeat that? Well, could you just call up the government and say, hey, do you have a copy of Judge Solano's decision? For my opening brief? Yeah. Well, I — You called Costa Rica. Did you just think about calling the United States Attorney's Office and say, do you have a copy, by chance, of the decision? I don't believe I did that, but that really, whether I had it or not, doesn't help me on the waiver issue. If Mr. — I could have all the documents, and if Mr. Anderson waived his right to assert the breach of the treaty, it would get me nowhere. Was there anything in the record at all to indicate that that decision was somehow part of the record or that — The Florida docket reflects that they sent the entire package to Washington. I called the Washington — Seattle District Court and was told that most of that case was under seal, that I would have to come up here for a motion to allow the judge to unseal it. But I also knew that Mr. Anderson, appearing pro se and having over 1,000 docket entries to go through, and I noticed in an immediate — after I got the case and started reading 37 volumes of trial, that my job was going to be difficult. I see. And besides that, I had a client that wouldn't communicate with me and said he's going to — Let me — one other thing I didn't understand from the reply brief, but there's Judge Solano's decision. Is there still another — Another final document that everybody's waiting for? Well, there is the final decree of extradition. It was issued by the Colonel Cora Cassation. The government has a copy in Spanish. They faxed me a copy this week at my request. I see. It's missing one page, okay? I spoke last night at 11 o'clock to a Costa Rican attorney who's handling a lawsuit on this very case in Costa Rica over the extradition. He has it, but that's not an official one I'm going to inquire. And I'd like this Court to allow me to pursue trying to get that final missing page. In other words, where the page became missing, I don't know. If it's missing at the court itself, I can get an official copy of the decree, but I may not be able to have that missing page. The government, I don't think, can answer that question either. But I would like time to be able to get this final decree. Do you think that, in light of these late sort of events that you've brought to our attention, that it would be sort of, we say, prudent on our part to remand this back to the district court, to let the district court make any findings and make the initial determinations, and then if the district court determines it's not waived to then look to see whether the specialty doctrine applies and if it applies to take appropriate action? I think that would be very expedient and in the interest of justice, because I can't say for sure I'm going to be able to get that document within a reasonable amount of time, because we're looking at two different waivers. We're looking at if Costa Rica waives the money laundering issues, then Mr. Anderson's without recourse. I do not believe that's the case, but I don't have an official word. I've been told that the criminal court of Castellon affirmed in all respects Judge Solano, but I don't have that document, and neither does the government. Then we would go to Mr. Anderson's waiver, which required me to wade through volumes of his motions, and I came up with perhaps two cases, two incidences where I can say he didn't waive it, and those are docket number entries 112 and 130, which are styled as complaints about the indictment and jurisdiction, but say not a motion. Inside, within those documents, Mr. Anderson complains about the 85 charges that violated the treaty. So if we're going to construe a pro se plaintiff's pleadings liberally like this Court is required to do, we have to ignore not a motion, and we have to read in to his complaint about the 87 or so charges that it violated the treaty by the rule of specialty and dual criminality lacking. And those were filed in early 2003, before the first superseding indictment in December of 2003. So the district court would probably need to clarify whether those motions can, because they were never responded to dispositively or even responded to by the government because it was not a motion. It was like a notice. I, I, it's my position for my client that those could be considered if one uses a plaintiff's broad picture as a motion to dismiss because of. Did you want to save a few seconds to, for rebuttal? Yes. Just in case, see what the government had to say. May it please the Court. Counsel, my name is Gregory Davis. I represent the United States. The simple way to resolve this is the waiver argument that we make in our short reply brief. Under this Court's decision in U.S. v. Heath, all defenses and objections based on defaults in the prosecution or indictment, other than challenges to subject matter jurisdiction, are waived by failure to waive them prior to trial. Now, the district court, pardon me, could determine whether to relieve a person from that waiver. Is that right? That's correct. And that's never happened? That's never happened. Of course, remember, this didn't happen until July of 2006 is the first time this was ever raised anywhere. Yeah. This case, as the defense counsel acknowledges, is very old and very messy and has at least 1,100 docket entries. It's not a pretty case. There's no way around it. It's not a pretty case. But under Heath, as I said, it's been waived procedurally. You then look at Rauscher and Brecken. Well, you know, the government wouldn't want to. The government has an obligation to abide by these treaty. We do, but still. Why would the government be interested in violating the terms of the treaty? We're not interested in violating the terms of the treaty, but we are arguing that he has waived the protections of the treaty. He was pro se in the district court, correct? He was pro se in the district court. I mean, this is an indication that's still valid. But what about this objection that counsel just brought to our attention? Was that of any significance? Well, if you look at page 3 of documents 112 and 130, it's one sentence where he just objects generally to those additional counts. He doesn't at all mention the doctrine of dual criminality. He doesn't mention the rule of specialty. He doesn't even call it a motion. I mean, you've got to do something for the court to at least put the court on notice. Just objecting generally isn't enough. But would he have known that without actually having a copy of the – did he have a copy of the decision? Do we know? I have no idea. That's not – Did the government have a copy of the decision at the – from the judge in Costa Rica at that time? Do you know? I don't know. The three attorneys who tried this are no longer associated with the tax division. It makes it difficult for us as well to sort of attempt to recreate things that happened a long time ago. The material – But doesn't it make – I mean, doesn't it sort of make, you know, somewhat – you know, for all concern and for all these reasons, wouldn't it be sort of wise or prudent to let this go back to the district court, to let the district court sort through all of this? I'm not going to concede that. I think our waiver argument is a winning argument. Well, if it's a winning argument, then the district court could buy it and say, you know, you ran a lot this year. But that requires a lot of extra work for everyone. He has waived it. Let me ask you this. Does it make a difference in terms of his sentence, whether or not these counts stand? I'm not sure. This was a post-Booker sentence. The Court imposed a sentence less than that recommended under the guidelines. It still – it was a 20-year sentence. Keith Anderson was the chief of the whole Anderson's arc scheme. It's not clear on the record whether the Court would impose the exact same sentence, but the likelihood – given that he imposed sentences of at least 15 years on other defendants, including defendants Keith Anderson's brother, Wayne, it would seem unlikely that the Court is likely to find a great deal of leniency for Keith Anderson. So there's nothing in the record to indicate that. There's nothing in the record to indicate that. So it might have an effect on his sentence. It's potential, but still, Your Honor, he waived it. All right. Thank you. Very, very briefly about the timing of these perhaps maybe motions objecting to the rule of specialty and dual criminality. They were filed in March 2003. The final superseding indictment was August 11th, 2004. And at that time, Judge Kohenhauer set November 1st, 2004, as the dispositive motion deadline. If we look at the indictments as a whole, as they effervesce and change and whatnot, the money laundering was always there. So he fell with the – if we can construe his document 112 and 130 as objecting to the treaty violation, they were filed well before November 1st deadline. Okay. Thank you. This matter will be submitted.
judges: D.W. Nelson, Thompson, Paez